# DECEMBER SESSION, 1965.

ANNONI *v.* HENSON.

DECISION OF THE COURT.

1. AUTOMOBILES—INSTRUCTIONS—FORM OF GENERAL VERDICT.
   Initial instructions to jury pertaining to rendition of general verdict and form thereof *held*, adequate, clear, and applicable to case arising from collision between plaintiff's westbound left-turning truck and 1 of 2 eastbound cars engaged in a race on the public highway.

2. TRIAL—GENERAL VERDICTS.
   A general verdict is the merger, or compound, into a single indivisible residuum of all matters, however numerous, whether of law or fact or application of the law to the facts, and a single error completely destroys it, since it is an inseparable and inscrutable unit.

3. SAME—SPECIAL VERDICTS.
   A special verdict compels detailed consideration by the jury and enables the public, the parties, and the court to see what the jury really has done, in contrast to the compound of a general verdict which is either all wrong or all right and not subject to inquiry as to how it was compounded.

4. SAME—GENERAL VERDICTS—INTERROGATORIES.
   General verdicts accompanied by interrogatories have been eliminated from the rules of civil procedure (GCR 1963, 514).

5. SAME—VERDICTS.
   A jury's failure to render a proper verdict is reversible error.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trials § 803.
[2–4] 53 Am Jur, Trials § 1005.
[5, 6] 53 Am Jur, Trials § 1028 *et seq.*
[7] 5 Am Jur 2d, Appeal and Error §§ 1011, 1012.
[8] 38 Am Jur, Negligence § 179.
[9–11] 3 Am Jur 2d, Automobiles and Highway Traffic § 719.
   Liability as between participants for accident arising from private automobile or other vehicle racing on public street or highway. 59 ALR2d 481.
[12, 13] 53 Am Jur, Trials § 1067.
[14] 53 Am Jur, Trials §§ 1094–1098.

6. AUTOMOBILES—GENERAL VERDICTS—SPECIAL VERDICTS.

Verdict of jury in action by left-turning westbound motorist whose truck collided with 1 of 2 eastbound cars driven by racing defendants *held,* reversibly erroneous, where it gave a general verdict of $40,000 for plaintiff, found the motorist in the eastbound colliding vehicle guilty of gross negligence, plaintiff guilty of contributory negligence, and other defendant guilty of ordinary negligence.

7. COSTS—REMAND—ERRONEOUS VERDICT.

Costs on appeal to Court of Appeals are directed to abide final result, where case arising from collision between left-turning westbound motorist and 1 of 2 eastbound racing motorists is remanded for new trial because of erroneous verdict rendered by jury.

DISSENTING OPINION.

J. H. GILLIS, P. J.

8. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—GROSS NEGLIGENCE.

*Contributory negligence of plaintiff will not prevent him from recovering for injuries sustained by the grossly negligent actions of the defendant.*

9. AUTOMOBILES—RACING ON PUBLIC HIGHWAY—JOINT TORT-FEASORS.

*Racing cars on a public highway, being concert of action in violation of law and, therefore, negligent conduct, makes the participants joint tort-feasors (CLS 1961, § 257.627).*

10. SAME—RACING ON PUBLIC HIGHWAYS.

*Express agreement to race cars on a public highway need not be shown by a plaintiff who was injured in a collision with 1 of 2 cars so engaged, it being sufficient to show a tacit understanding between the participants of such event in order to hold them as joint tort-feasors.*

11. SAME—RACING—GROSS NEGLIGENCE.

*Joint tort-feasors are equally liable for the conduct of the most culpable, hence, where jury found 1 of 2 defendant racing motorists guilty of gross negligence, the finding of contributory negligence on the part of plaintiff would not bar recovery against other motorist notwithstanding a specific finding such other noncolliding motorist was guilty of only ordinary negligence.*

12. SAME—GENERAL VERDICT—SUBSEQUENT INTERROGATION OF JURY.

*Interrogation of jury by the court and counsel for plaintiff and both defendants, after general verdict for plaintiff, as to wheth-*

er defendants had been racing prior to the collision of one of
them with plaintiff's truck, held, not prejudicial error as to
defendants whose car had collided with plaintiff's vehicle (GCR
1963, 514).

13. SAME—MULTIPLE DEFENDANTS—GENERAL VERDICT—SUBSEQUENT
INTERROGATION.

Interrogation of jury after it had asked for further instruction
as to liability of defendant motorist whose noncolliding car
had been racing with car which did collide with plaintiff's
truck, and which interrogation was permitted after rendition
of general verdict for plaintiff held, not prejudicial error,
where no objection to such questioning by the court and all
counsel on both sides has been noted on the record, and the
special findings were entirely consistent with the general verdict
and subsequent judgments (GCR 1963, 514).

14. TRIAL—AMENDMENT OF VERDICT—INTENT.

The court may amend the verdict, and correct manifest errors of
form and sometimes matters of substance to make it conform
to the intention of the jury, where the intent is ascertainable.

Appeal from Wayne; Bowles (George E.), J.
Submitted Division 1 May 11, 1965, at Detroit.
(Docket No. 259.) Decided December 20, 1965.
Leave to appeal denied by Supreme Court March 9,
1966. See 377 Mich 704.

Case by Anthony Annoni against Ronald D. Henson, Theodore Henson, Glenn L. Mohney, Jr., and
Glenn L. Mohney, Sr., for personal injuries sustained
in collision of motor vehicles. Verdict and judgment
for plaintiff. Defendants appeal. Reversed and
remanded for new trial.

*Bernard J. Fieger,* for plaintiff.

*Marentay, Rouse, Selby, Webber & Dickinson*
(*Roger P. Mourad,* of counsel) and *Paul R. Mahinske,* for defendants Henson.

*William J. McBrearty,* for defendants Mohney.

Watts, J. This is a civil suit by Anthony Annoni against Ronald L. Henson, Theodore Henson, Glenn L. Mohney, Jr., and Glenn L. Mohney, Sr., for personal injuries and damage to motor vehicle sustained in a collision with one of two cars engaged in a race. Case was heard subsequent to January 1, 1963 (effective date of GCR 1963, 514). Judgment for plaintiff; defendants appeal.

At noon on June 4, 1960, an automobile driven by defendant Ronald L. Henson collided with a truck driven by plaintiff Anthony Annoni at the intersection of Eight Mile road and Greeley street in the city of Detroit. The weather was clear and the pavement dry.

There is competent testimony that defendants Ronald L. Henson and Glenn L. Mohney, Jr., were engaged in a race.

The testimony is undisputed that defendant-driver Henson did not see the Annoni truck until just before the impact and that plaintiff Annoni did not see the Henson car until just before the truck and the car collided.

Plaintiff Annoni, driving a 1955 Ford pick-up truck, entered the westbound traffic lanes of the Eight Mile road at Dequindre and continued to operate said motor vehicle in a westerly direction on Eight Mile road to a place where the same intersects with Greeley street. Plaintiff testified that he made a left turn at the said intersection and brought his vehicle to a stop at the northerly curb line of the eastbound traffic lanes on Eight Mile road, at which time he observed traffic traveling in an easterly direction on Eight Mile road approximately four blocks west of Greeley; he could not judge the speed of the approaching traffic. He started to drive across the eastbound lanes of Eight Mile road when his truck was struck on the right midside by the front

of an eastbound 1957 Plymouth driven by Ronald
L. Henson. The collision occurred in the center of
the eastbound lanes of Eight Mile road. Plaintiff
Annoni and defendant-driver Henson were injured
in the accident; Annoni's truck and the Henson auto-
mobile were damaged.

The testimony is undisputed that defendant-driver
Mohney did see the Henson car and the Annoni
truck before the accident; and at the time the Annoni
truck and the Henson automobile collided, the car
that he (Mohney) was driving was approximately
1-1/2 to 2 blocks from the scene of the accident.

The trial court in the first instance instructed the
jury to render a general verdict and further in-
structed the jury on the form to be used. The in-
structions were adequate, clear, and applicable to
the instant case.

The record indicates that the members of the jury
were uncertain as to the application of the court's
instructions to the jury on the facts relating to de-
fendants Mohney during their deliberation:

*"Foreman of the jury.* If we find that Henson
was guilty of gross negligence and that a race was
started between Henson and Mohney, and that
Annoni was guilty of contributory negligence, in
Henson's case, how does this affect the liability of
Mohney? *   *   *

*"The Court.* If you should find that Henson and
Mohney were engaged in a race; if you should fur-
ther find that the driver Henson is guilty of gross
negligence, as previously defined by the court, then
it would be necessary for you to bring in a special
verdict, or an answer to a so-called special question.
The court would require you to bring in to be re-
ceived by the clerk of this court, a finding as to
whether young Mohney was guilty of ordinary neg-
ligence, as defined, or guilty of gross negligence.

"Thereafter the Court and able counsel will take it up as a matter of law.

"Do you understand what my answer is?

"*Jury members.* Yes.

"*The Court.* On an 'iffy' basis, if you find as I have indicated in response to your question given to the court now, the court would still require you to bring in a specific finding as to whether or not young Mohney was guilty of ordinary negligence or gross negligence.

"Is it clear?

"*Foreman of the jury.* Your Honor, this means we go back and make certain decisions, and then we will return for further instructions?

"*The Court.* No, this contemplates you will resume your deliberations and bring in a verdict, a general verdict, but also bring in an answer to the question I have given you, namely, an answer to the question whether you find driver Mohney guilty of ordinary negligence or gross negligence."

The trial court's answer to the question of the foreman of the jury is reflected in the finding of the jury which is inconsistent with the general verdict:

"*Foreman of the jury.* We find for the plaintiff.

"We find for Henson, son and father, guilty of gross negligence.

"We find Annoni was guilty of contributory negligence.

"We find Mohneys, son and father, guilty of ordinary negligence.

"We find for a total of $40,000."

The trial court instructed the jury to bring in a general verdict and at the same time told the jury:

"Thereafter, the court and able counsel will take it up as a matter of law."

The statement by the court is inconsistent with the court's instruction (to bring in a general verdict) and may have added to the uncertainty of the jury as to the application of the court's instructions on the facts relating to defendants Mohney.

In *Sahr* v. *Bierd* (1958), 354 Mich 353, 364, Justice TALBOT SMITH writing the opinion of the Court quoted, in part, a leading article by Professor Sunderland in 29 Yale LJ 253, 258–260 (Verdicts, General and Special):

" 'The peculiarity of the general verdict is the merger into a single indivisible *residuum* of all matters, however numerous, whether of law or fact. It is a compound made by the jury which is incapable of being broken up into its constituent parts. No judicial reagents exist for either a qualitative or a quantitative analysis. The law supplies the means for determining neither what facts were found, nor what principles of law were applied, nor how the application was made. There are therefore 3 unknown elements which enter into the general verdict: (a) the facts; (b) the law; (c) the application of the law to the facts. And it is clear that the verdict is liable to 3 sources of error, corresponding to these 3 elements. It is also clear that if error does occur in any of these matters it cannot be discovered, for the constituents of the compound cannot be ascertained. No one but the jurors can tell what was put into it and the jurors will not be heard to say. The general verdict is as inscrutable and essentially mysterious as the judgment which issued from the ancient oracle of Delphi. Both stand on the same foundation—a presumption of wisdom. The court protects the jury from all investigation and inquiry as fully as the temple authorities protected the priestess who spoke to the suppliant votary at the shrine. It is quite probable that the law is wise in not permitting jurors to testify as to how they compounded their verdict, for all stability would disap-

pear if such inquiries were open. But it does not follow that there is not some better way of deciding controversies than by means of this mysterious agency. If the compound cannot be subjected to analysis perhaps it can be dispensed with. * * * The special verdict compels detailed consideration. But above all it enables the public, the parties, and the court to see what the jury really has done. The general verdict is either all wrong or all right, because it is an inseparable and inscrutable unit. A single error completely destroys it.' "

General verdicts accompanied by interrogatories were eliminated from the rules of civil procedure in Michigan by GCR 1963, 514.

Revised judicature act, § 223 (CLS 1961, § 600.223 [Stat Ann 1962 Rev § 27A.223]):

"The Supreme Court has authority to promulgate and amend general rules governing practices and procedure in the Supreme Court and all other courts of record, including but not limited to authority: * * *

"(2) to prescribe the practices and procedure in the Supreme Court and other courts of record concerning: * * *

"(b) special verdicts."

GCR 1963, 514, reads in part as follows:

"The court may require the jury to return a special verdict in the form of a special written finding upon each issue of fact and in such cases no general verdict shall be returned."

GCR 1963, 516.4, reads as follows:

"While the jury is deliberating the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Objections thereto shall be made in a motion for new trial."

It is our opinion that the jury's failure to render a proper verdict is *reversible error*.

We have considered defendant's other assignments
of error and find them to be without merit.

The case is remanded to the Wayne county circuit
court for a new trial.   Costs to abide final result.

MCGREGOR, J., concurred with WATTS, J.

J. H. GILLIS, P. J. (*dissenting*).   Plaintiff was
driving his pickup truck west on Eight Mile road,
a divided highway, on Detroit's northern boundary.
He made a left turn at Greeley and while proceed-
ing across the eastbound section of Eight Mile road
was struck by the eastbound car of the defendant
Henson.[1]

There was substantial evidence to support a find-
ing that the Henson car was engaged in a race with
the car of the defendants Mohney.[2]   An apparently
disinterested witness estimated the speed of the de-
fendants' vehicles to be between 70 and 75 miles
per hour when they were just two short city blocks[3]
away from the accident, with the two cars almost
adjacent to each other and young Henson slightly
in the lead.   At the time of impact, the same witness
testified Mohney was less than half a block behind
Henson.

Both defendant-drivers testified and denied being
engaged in a race, denied excessive speed, and young
Mohney placed himself two blocks from the accident
at the time of impact.   Young Mohney admitted that
he might have told the prosecutor that Ronald Hen-
son signaled to him that he wanted to race.   He

---

[1] The car was owned by defendant Theodore Henson and with his
consent operated by the defendant Ronald L. Henson.   See CLS 1961,
§ 257.401 (Stat Ann 1960 Rev § 9.2101).

[2] This car was owned by the defendant Glenn L. Mohney, Sr.,
and with his consent operated by the defendant Glenn L. Mohney, Jr.
It was not directly involved in the accident.

[3] Each block was 216 feet long and the paved street between the
blocks was 30 feet wide.

likewise stated in his deposition that Henson was
going between 65 and 80 miles an hour.

Plaintiff brought suit for the serious injuries he
sustained in the accident and the jury returned a
verdict of $40,000. Of the several questions raised
by appellants, only two merit discussion and they
revolve around supplementary instructions to the
jury and the manner in which the verdict was re-
ceived by the court.[4]

My colleagues on this panel agree that the court's
initial charge to the jury was accurate and complete.
Indeed appellants do not challenge it on this appeal.
The problem herein arose after the jury commenced
its deliberations when it returned and posed the
question:

"If we find that Henson was guilty of gross negli-
gence and that a race was started between Henson
and Mohney and that Annoni was guilty of contribu-
tory negligence in Hensons' case, how does this
affect the liability of Mohney?"

This question generated an "in chambers" dis-
cussion between the court and counsel which was
not made a matter of record. The trial commenced
May 20, 1963, terminated June 7, 1963, and the jury
had deliberated almost a day and a half, when, in
what he termed "an excess of caution" the trial court,
without objection from the counsel for any of the
parties,[5] answered the jury's question as follows:

---

[4] These are the only points raised on appeal by the Mohneys. The
claim of the Hensons that there was insufficient proof to support a
finding of gross negligence or wilful and wanton misconduct is without
merit.

[5] In his opinion denying defendants' motion for a new trial, the
trial court said, "[The jury] came in with the specific inquiry that
has been alluded to by all counsel here today, and again this was
taken up very carefully, both in chambers and on the record outside,
with counsel. I think it is rather interesting to note in passing, that
at no time did counsel for any of the defendants ever interpose any
objection whatsoever to the queries that the court told counsel it was
going to make of the jury."

"If you should find that Henson and Mohney were engaged in a race; if you should further find that the driver Henson is guilty of gross negligence, as previously defined by the court, then it would be necessary for you to bring in a special verdict, or an answer to a so-called special question. *The court would require you to bring in to be received by the clerk of this court, a finding as to whether young Mohney was guilty of ordinary negligence, as defined, or guilty of gross negligence.*[6] (Emphasis supplied.)

"Thereafter, the court and able counsel will take it up as a matter of law.

"Do you understand what my answer is?

"*Jury members.* Yes.

"*The Court.* On an 'iffy' basis, if you find as I have indicated in response to your question given to the court now, the court would still require you to bring in a specific finding as to whether or not young Mohney was guilty of ordinary negligence or gross negligence.

"Is it clear?

"*Foreman of the jury.* Your Honor, this means we go back and make certain decisions, and then we will return for further instructions?

"*The Court.* No, this contemplates *you will resume your deliberations and bring in a verdict, a general verdict,* but also bring in an answer to the question I have given you, namely, an answer to the question whether you find driver Mohney guilty of ordinary negligence or gross negligence. (Emphasis supplied.)

"Therefore, the question of his ultimate liability will be decided by the court as a matter of law.

"Do you understand?

"*Foreman of the jury.* Yes.

---

6 Mohneys contend the emphasized statement improperly left the jury only two alternatives—to find ordinary negligence or gross negligence on young Mohney's part. This is reading the court's instruction out of context. It was clearly supposed by both the court and jury that such would be the jury's alternatives. *"If you should find that Henson and Mohney were engaged in a race,"* (Emphasis supplied.)

"*The Court.* This contemplates you will resume your deliberations and *bring in a general verdict.* (Emphasis supplied.)

"Thank you."

Following an hour of further deliberation, the jury returned with a verdict which was recorded as follows:

"*Foreman of the jury.* We find for the plaintiff.

"We find for Henson, son and father, guilty of gross negligence.

"We find Annoni was guilty of contributory negligence.

"We find Mohneys, son and father, guilty of ordinary negligence.

"We find for a total of $40,000.

"*The Court.* Under the previous instructions to the jury, and in accordance with prior advance to counsel, of record in this cause, the matter of the operation of this verdict, as against defendants Mohney, will remain a question of law for argument by able counsel and for adjudication by this court as a question of law.

"With that in mind, you may ask them.

"*Clerk.* Members of the jury, you will listen to your verdict as recorded, you say upon your oath you find in favor of the plaintiff and against the defendants, Ronald L. Henson and Theodore Henson, for wanton and wilful misconduct in the sum of $40,000; so say you, Mr. Foreman, and so say you, members of the jury?

"*Jury members.* We do."

The jurors were then individually polled and the following proceedings took place:

"*The Court.* Mr. Foreman and ladies and gentlemen of the jury, is the court to understand and are able counsel to understand, that you made a finding that the younger Henson and the younger Mohney did engage in a race as defined by the court?

"*Foreman of the jury.* Yes.

"*The Court.* Do able counsel for the respective parties, who worked very hard in this case, have any further inquiries they would like to make at this time.

"*Mr. Fieger.* One, Your Honor.

"In regard to the request of the clerk as to the verdict of the court, the question was asked of them was solely as to the wilful and wantonness as to Henson on $40,000. Should not the request be made to them on ordinary negligence as against Mohney in the same amount?

"*The Court.* As to the operation, as to whether—

"*Mr. Fieger (interposing).* I understand, Your Honor.

"*The Court.* As to the operation, as to whether the verdict will stand as to the Mohneys, is a question of law, but I think the clerk may ask the foreman, and then the jury individually if it is their finding that defendant Mohney was guilty of ordinary negligence?

"*Clerk of the Court.* Members of the jury, will you listen further to your verdict as recorded? You say upon your oath that you find the defendants, Glenn Mohney, Jr., and Glenn Mohney, Sr., guilty of ordinanry negligence? So say you, Mr. Foreman, and so say you, members of the jury?

("Members of the jury polled.)     *   *   *

"*Mr. McBrearty.* Your Honor, may I interpose.

"Maybe the question is confusing. Since we want to avoid a new trial in this case, it might be advisable for the jury to say on this record, whether or not they, in fact, found, other than they have already stated, that Mohney Junior was engaged in a race?

"*The Court.* We covered that.

"*Mr. McBrearty.* Yes. Whether or not he, Glenn Mohney, Junior, was responsible in damages to Anthony Annoni?

"*The Court.* I think we have covered that. We covered the race.

"*Mr. McBrearty.* I think the jury should be inquired of this.

"*The Court.* Counsel, we have by previous direction told them that the matter of whether or not the judgment is to be offered against Mohney, is a matter of law to be determined by the court after argument by able counsel.

"I am delighted to propound to the jury and to take their responses collectively and individually, any question that bears upon the interest of your client, or your brother's clients. I think that has already been answered.

"Let me put it again.

"*Mr. McBrearty.* Your Honor, here is my point. Here is my point entirely. This is more than a question of law, this is a question what the jury finds against the persons I represent.

"Now, if they are saying by their verdict—

"*Mr. Fieger (interposing).* Excuse me. I must interrupt.

"The potentiality at this point, if the possibility occurs, the jury to return to their room for further deliberations, and the potentiality of difficulty if our arguments on law is noted, and since the jury is sitting there, I would strictly ask the court to consider the problem—

"*The Court (interposing).* I think we have covered all the matters that can be covered except for the poll of the jury. I will be glad to allow counsel, at a later time to argue any proposition of law they wish to argue.

"Counsel, do you have anything further?

"*Mr. Mourad.* I ask in behalf of Mr. Henson was Anthony Annoni contributorily negligent?

"*The Court.* It was already covered.

"*Mr. Mourad.* What was their return?

"*The Court.* I have already said that. There is no question about that.

"*Foreman of the jury.* That was in what I read.

"*The Court.* All right.

"*Mr. McBrearty.* Your Honor, the very point at issue here is, does this jury, by their verdict, find against Mohney Junior and Senior? And I am still

bewildered by their verdict, because I don't know what their answer is on this. I think we are entitled to know. We will never have a chance to inquire of this jury again.

*"The Court.* The determination of that question, they have told us they found Mohney guilty of ordinary negligence, and then it becomes a question of law, since they found a *race by their verdict and finding,* whether or not one was guilty of ordinary negligence while the other was guilty of gross negligence, may be bound by this verdict. That is a question of law. (Emphasis supplied.)

"I appreciate the concern of able counsel, and I think we have covered all possible matters upon which inquiry can be properly made of this jury."

Based upon the jury's verdict a judgment was entered in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $40,000.

This opinion will deal with two questions: (1) Did the trial court correctly apply substantive legal principles in entering a judgment against the four defendants? and (2) Did the irregularities that occurred when the verdict was accepted so prejudice any of the appellants that a new trial must be ordered?

## The Application of Substantive Law

It has been repeatedly held that contributory negligence will not prevent a plaintiff from recovering for injuries sustained by the grossly negligent actions of the defendant. *Flanagan* v. *Arnold* (1926), 236 Mich 180. Appellants do not argue this point, but appellants Mohney insist that since the jury found them guilty only of ordinary negligence, the defense of contributory negligence bars plaintiff from any relief against them.

This argument ignores the additional finding of the jury that the two defendant-drivers were engaged in a race. Defendants' concert of action, being in violation of law[7] and negligent, makes them joint tort-feasors. See *Benson* v. *Ross* (1906), 143 Mich 452 (114 Am St Rep 675). It was unnecessary for the plaintiff to establish an express agreement between the two defendant-drivers.

"All that is required is that there be a tacit understanding, as where two automobile drivers suddenly and without consultation decide to race their cars on the public highway." Prosser, Torts (3d ed 1964), § 43, p 259.

Since Mohney was a joint tort-feasor with one found guilty of gross negligence, it follows that plaintiff's contributory negligence does not bar a recovery against Mohney. Joint tort-feasors are equally liable for the conduct of the most culpable.

"Where there is a concerted action toward a common end, both parties are liable for all acts within the scope of the undertaking." *King* v. *Herfurth* (1943), 306 Mich 444. See, also, *Fisher* v. *Rumler* (1927), 239 Mich 224.

"Those of the wrongdoers who are sued together and found guilty in an action of tort are liable for the whole injury to the plaintiff, without examining the question of the different degrees of culpability." *Washington Gas Light Co.* v. *Lansden* (1899), 172 US 534, 552 (19 S Ct 296, 43 L ed 543), quoted in *Bowerman* v. *Detroit Free Press* (1937), 279 Mich 480, 490.

## *Irregularities in Accepting the Verdict*

Appellants' main reliance for reversal is upon the failure of the trial court to comply with the provi-

---

[7] See CLS 1961, § 257.627 (Stat Ann 1960 Rev § 9.2327).—RE-PORTER.

sions of GCR 1963, 514.[8]  While this opinion should not be read as approving the procedures adopted by the trial judge, we review his action mindful of the provisions of CLS 1961, §§ 600.2301, 600.2315 (Stat Ann 1962 Rev §§ 27A.2301, 27A.2315).  We cannot perceive how the defendants were prejudiced in any way by the manner in which the jury delivered its verdict.

As to the defendants Henson, a general verdict was rendered against them.  It was not until after the verdict was rendered and the jury polled that the court inquired specially of the jury if they found that Henson and Mohney did engage in a race.  At no time prior to the rendition of the verdict did the court suggest that the jury find any fact specially as to the liability of the defendants Henson.  Clearly, his *subsequent* interrogation and the *subsequent interrogation by counsel for both parties* could not possibly have prejudiced the Hensons' rights and for that reason the judgment as to them should be affirmed.

As to the Mohneys a different problem is involved. No general verdict was brought in against them. After the jury sent its question, noted above, to the court and after a full discussion of the matter in chambers between the court and counsel, the court decided not to allow a general verdict as to the Mohneys.  The trial judge justified his actions in

---

8 GCR 1963, 514, provides in part as follows: "The court may require the jury to return a special verdict in the form of a special written finding upon each issue of fact and in such cases no general verdict shall be returned.  If a special verdict is to be required, the court shall, in advance of argument and in the absence of the jury, advise counsel of this fact and on the record or in writing settle the form of the verdict.  In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; *or it may* use such other method of submitting the issues and requiring the *written findings* thereon as it deems most appropriate." (Emphasis supplied.)

this respect in his opinion denying the Mohneys' motion for new trial.

"The jury did not bring in a general verdict against the defendants here involved [the Mohneys] because of the court's explicit instructions that they should not do so; it should be emphasized again that this instruction was given in [an] excess of caution to protect the rights of these defendants because of the novel question of law raised. We submit that it is a question of law for the court and this court properly entered verdicts against these defendants since there is no degree of culpability of consequence as between joint tort-feasors."

The need for a special verdict to protect the rights of the Mohneys did not become apparent to either the court or counsel until after the jury made its inquiry. It would be an unreasonable construction of Rule 514 to say that counsel could not at that time agree to a special verdict under such circumstances. Apparently that is what was done in the off-the-record discussion in chambers. No objection was noted on the record.

Essentially then what we are asked to do is to set aside a verdict because the special questions asked of the jury were not required to be answered in writing. Not only was there no objection to this procedure, but counsel for both defendants participated in orally asking special findings of fact from the jury after the verdict was returned.

It is somewhat ironic that Mohneys' counsel seeks a new trial because special findings were requested of the jury when he himself stated at the time the verdicts were returned:

"*Since we want to avoid a new trial in this case,* it might be advisable for the jury to say on this record whether or not they, in fact, found other

than they have already stated that Mohney, Jr., was engaged in a race." (Emphasis supplied.)

We do not deem it necessary to decision in this case to express an opinion whether Rule 514 would be violated in a multiple defendant case by the return of a general verdict as to some defendants and special verdicts as to others *in the face of a timely objection*. Suffice it to say, that no prejudice resulted to any of the defendants by the procedure adopted by the court. The special findings of the jury were entirely consistent with the general verdict and the subsequent judgments.

In the case of *Standard Oil Company* v. *Gonser* (1951), 331 Mich 29, 33, the Court cited approvingly the language from *Rabior* v. *Kelley* (1916), 194 Mich 107, 117, as follows:

"There can be no doubt that where the intention of the jury is ascertainable the court may amend the verdict, correcting manifest errors of form, and sometimes matters of substance, to make it conform to the intention of the jury."

See, also, *In re Sorter's Estate* (1946), 314 Mich 488 (164 ALR 985), where the Court questioned the jury to determine the meaning of its verdict.

I would affirm the judgment below.