CAREY v. TOLES.

1. NEGLIGENCE—ASSUMPTION OF RISK.

Assumption of risk has been eliminated in this State as a defense to an action for negligence, except in certain defined areas not applicable here.

2. SAME—GENERAL VERDICT—SPECIAL VERDICT—SURPLUSAGE.

Verdict stating, "We, the jury, *find Edward Toles not negligent and we* find no cause for action for James Carey; no cause for action for Edward Carey" *held*, a valid general verdict, and not a special verdict, where no special verdict was requested, since the italicized words were mere surplusage not affecting the validity of the verdict.

3. SAME—ASSUMPTION OF RISK—INSTRUCTIONS—VERDICT—THEORY OF CASE.

Instruction that plaintiff could not recover if the jury found plaintiff assumed the risk *held*, reversible error, even though

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 38 Am Jur, Negligence § 171.
[2] 38 Am Jur Negligence § 372; 53 Am Jur, Trial §§ 1005, 1063.
[3] 38 Am Jur, Negligence §§ 171, 362, 367, 370; 53 Am Jur, Trial §§ 574, 1036, 1038, 1063.
[5] 20 Am Jur 2d, Courts §§ 64, 67, 80, 81, 233.
[6, 7] 38 Am Jur, Negligence §§ 171, 362, 367, 370; 53 Am Jur, Trial § 574.
[8] 38 Am Jur, Negligence §§ 6, 362, 370; 53 Am Jur, Trial § 574.
[9] 38 Am Jur, Negligence §§ 362, 370; 53 Am Jur, Trial §§ 509, 510, 535, 539, 566, 568, 574.
[10] 5 Am Jur 2d, Appeal and Error §§ 723, 897, 898.
[11] 38 Am Jur, Negligence §§ 344, 345, 347, 348.

verdict of no cause of action also stated defendant was not negligent, thereby making affirmative defenses immaterial, where defendant relied upon the theory of assumption of risk throughout the trial, and that portion of the jury verdict finding no negligence on the part of defendant constituted mere surplusage and no part of the general verdict.

4. SAME—ASSUMPTION OF RISK—PROSPECTIVE OPERATION OF PRECEDENT.

The rule abolishing assumption of risk as a defense to certain actions for negligence is clearly prospective in nature, although there has been no exact judicial determination with respect to the application of said rule to cases tried prior to the date when said rule was announced.

5. COURTS—PROSPECTIVE OPERATION OF PRECEDENT.

The Court of Appeals does not determine the application of a prospective rule of law to cases tried prior to the date said rule was announced, where such determination is not necessary to a decision.

6. NEGLIGENCE—ASSUMPTION OF RISK—INSTRUCTIONS—REQUESTED INSTRUCTIONS—REVERSIBLE ERROR.

An instruction that plaintiff was not entitled to recover from defendant if the jury found that plaintiff assumed the risk, and refusal to give a requested instruction eliminating assumption of risk from the case *held*, reversible error, where, although the testimony at trial was completed before announcement of the rule abolishing assumption of risk as a defense, assumption of risk was not, in fact, a proper issue in the case.

7. SAME — BASEBALL — ASSUMPTION OF RISK — INSTRUCTIONS — REQUESTED INSTRUCTIONS.

An instruction by the trial court that plaintiff, injured when struck by a baseball bat thrown through alleged negligence of defendant while plaintiff and defendant were participating in a baseball game, could recover no damages if the jury found that plaintiff had assumed the risk *held*, reversible error, where plaintiff's counsel properly objected to such instruction and requested an instruction eliminating assumption of risk from jury consideration, and assumption of risk was not properly an issue in the case.

8. SAME—BASEBALL—INSTRUCTIONS—UNAVOIDABLE ACCIDENT—CONTRIBUTORY NEGLIGENCE—REQUESTED INSTRUCTION—OBJECTION.

An instruction by the trial court that plaintiff, injured when struck by a baseball bat allegedly thrown through negligence

by defendant while plaintiff and defendant were participating in a baseball game, could recover no damages if the jury found that plaintiff's injuries were purely accidental *held*, reversible error, where plaintiffs' counsel properly objected thereto and requested an instruction eliminating unavoidable accident from the case, since said instruction implied that the jury might find that plaintiff's injuries were the result of an unavoidable accident when the only proper issues for jury determination were the questions of negligence by defendant and contributory negligence by plaintiff.

9. TRIAL—INSTRUCTIONS—THEORY OF CASE.
    It is the responsibility of the trial court to explain the issues and principles of law applicable to the facts in issue, including each party's theory of the case, although there is no requirement that the claims of the respective parties be given in the exact language set forth in requests to charge made by counsel.

10. APPEAL AND ERROR—INSTRUCTIONS—THEORY OF CASE.
    The Court of Appeals does not pass upon plaintiff's claim that the trial court committed prejudicial error in failing to instruct the jury with respect to plaintiff's theory of the case, where the case is reversed for a new trial on other grounds, and the Court of Appeals is assured that proper instructions will be given at the new trial.

11. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—MOTION FOR DIRECTED VERDICT.
    Claim by plaintiff that the trial court committed error in failing to grant plaintiff's motion for a directed verdict on the issue of negligence on the part of defendant and freedom from contributory negligence by minor plaintiff *held*, without merit, where the testimony in the record does not mandate such action by the court.

Appeal from St. Clair; Streeter (Halford I.), J. Submitted Division 2 February 8, 1967, at Detroit. (Docket No. 772.) Decided June 27, 1967.

Complaint by Edgar Carey, individually and as next friend of James Carey, a minor, against Edward Toles, by his guardian *ad litem,* Howard Murray, for damages arising from personal injuries sustained by James Carey when struck by a baseball

bat thrown by Edward Toles during the course of a baseball game. The jury returned a verdict of no cause of action. Plaintiffs' motion for judgment notwithstanding the verdict and for a new trial was denied. Plaintiffs appeal. Reversed.

*Walsh, O'Sullivan, Stommel & Sharp,* for plaintiffs.

*Schlee, McIntosh, Simpson, Oppliger & Mugan,* for defendant.

LESINSKI, C. J. Plaintiffs appeal from a judgment entered on a jury verdict of no cause of action as to both plaintiffs, and from a subsequent order denying plaintiffs' motion for judgment notwithstanding verdict and for a new trial.

A summer baseball game and a winter snowstorm join forces in an unexpected manner to create the legal issues presented here. On July 7, 1961, plaintiff James Carey and defendant Edward Toles, ages 15 and 13 respectively, engaged in an afternoon pickup type of baseball game on a field behind the Garfield school in Port Huron, Michigan. It was explained during the course of the trial that in such a game, where each team does not have the full complement of players, certain special rules govern. They are worth our noting at the outset. These rules require that the batter hit only to center and one of the fields, because the teams are short players to cover all positions. A right-handed batter is thus limited to center and left field (and the reverse for a left-handed batter). If the batter hits the ball into the wrong field, it is an automatic "out."

With this rule in mind, we can resume our account of the happenings of the afternoon in question. Edward Toles, a right-handed batter, was at bat. There were two "outs." He hit the ball into right field, and started to run; then he threw his bat which

hit James Carey, who was on the sidelines between home plate and first base. The ensuing injuries were undisputed. They necessitated extensive surgery on James Carey's mouth, his jaw bone, and the replacement of 9 teeth, lost as a result of the injury, with a prosthesis. James Carey, by his next friend Edgar Carey (who is James' father) and Edgar Carey individually, brought a negligence action against Edward Toles by his guardian *ad litem,* Howard Murray, thereby seeking to recover damages for the ensuing expense and the injuries described.

The trial began on February 16, 1965, and continued on February 17th, 18th, 23d and 24th. On the last-named date the closing arguments were completed. As the judge adjourned for the day he mentioned that it had begun to snow quite hard. As most Michigan residents will recall, that snow marked the advent of a storm of blizzard proportions, which, coupled with a death in a juror's family, caused a delay in the resumption of the proceedings until March 3, 1965. On that date the charge to the jury was given, pursuant to which it brought back the verdict of no cause of action. After the denial of plaintiffs' post-trial motions mentioned at the beginning of this opinion, plaintiff appealed.

On March 1, 1965, the Michigan Supreme Court decided *Felgner* v. *Anderson* (1965), 375 Mich 23. This much-heralded case eliminated the defense of assumption of risk in Michigan except in certain defined areas not applicable here with the following language at p 56:

"Assumption of risk should not again be used in this State as a substitute for, or as a supplement to, or as a corollary of, contributory negligence; nor should it be used to explain a law violator's enlarged duty of due care resulting from his violation of law. The traditional concepts of contributory negligence are more than ample to present that affirm-

ative defense to established negligent acts. See 2 Harper and James, The Law of Torts, § 21.1 *et seq.* (1956). Language other than that of assumption of risk easily can be found to describe the enlarged scope of the duty of due care imposed upon one who voluntarily violates statutory or common-law standards of due care."

On March 3d, plaintiffs' counsel, in proceedings had in the absence of the jury, requested by motion that the court eliminate as inapplicable any instruction involving the doctrine of assumption of risk, based upon the *Felgner Case.* This was not the first time that plaintiffs' attorney sought to remove this theory from the case. In proceedings in chambers prior to the selection of the jury, in argument in opposition to defendant's motion for a directed verdict at the close of plaintiffs' case, in recorded discussion with the court over the proposed jury instructions, plaintiffs' counsel had previously made diligent efforts to voice timely and forceful objection to the applicability of this doctrine to the facts of the instant case, prior to the *Felgner* decision. He also renewed his objection, prior to the charge, to a defense (and at this point an instruction) on the theory of unavoidable accident.[1] From the foregoing summary, it is apparent that plaintiff has preserved for our review the questions raised on appeal, which were again posed in the post-judgment motions which were denied.

The first issue as might be anticipated from the foregoing discussion, alleges reversible error in the instruction given by the court and its refusal to give the plaintiffs' requested instruction relative to "assumption of risk," or to paraphrase the wording

---

[1] The court charged the jury on both the assumption of risk and the unavoidable accident theories.

Both theories had been raised initially as affirmative defenses in the pleadings and later incorporated in defendant's requested instructions.

chosen by plaintiffs, to otherwise cover this theory to "bring the case within established Michigan law."

In order to review the instruction here, we set it forth in the margin[2] for perusal. We follow this with the court's opinion denying plaintiffs' motion subsequent to the entry of judgment[3] as it contains the court's rationale for denial of plaintiffs' motions which followed the verdict and judgment.

The jury verdict specified that it found no negligence on the part of the defendant. The defendant, in seeking affirmance of the actions below, here alleges that since the jury made this specification, plaintiffs' assignment of error is immaterial and beside the point. Defendant's theory rests on the premise that a finding of negligence was prerequisite to the necessity for any affirmative defenses. Plaintiffs counter by stating that the verdict, as repeated in the court's opinion set forth in footnote 3, amounted to a special verdict, and was therefore

---

[2] "I further instruct you that the plaintiff, James Carey, in this case was a voluntary participant in a baseball game and as such is deemed to have assumed the natural and ordinary risks of that game. If you therefore find that being struck by the bat in this case was a natural and ordinary risk of the game and not an extraordinary risk you will return a verdict of no cause for action in favor of the defendant in this case."

The court's refusal to give an instruction in keeping with plaintiffs' request was premised on this determination: "I think at this time whatever errors are made are made, and it is too late to resurrect this thing now."

[3] "OPINION DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND DENYING NEW TRIAL

"These cases involve injuries to plaintiff son received during a baseball game. The defendant at the time was 13 years of age. After hitting the ball, the defendant proceeded to run to first base; and, in so doing, threw the bat which struck the plaintiff causing the injuries. The plaintiff was struck in the general area of home plate. At the conclusion of the case the jury returned the following verdict:

"'We, the jury, find Edward Toles not negligent and we find no cause for action for James Carey; no cause for action for Edgar Carey.'

"There was testimony upon which the jury could base its verdict. The jury was properly instructed regarding the question of negligence; and, in view of the jury's specific finding of no negligence, the other matters raised in plaintiff's brief are unimportant."

improper. Before reaching the prime issue, it is therefore necessary for us to deal with these two preliminary matters. First, was the verdict, as rendered, a special verdict? It is clear that no special verdict was requested or required by the court pursuant to GCR 1963, 514. The cases cited by plaintiffs deal with situations in which special verdicts were requested and furnish no precedential assistance for the plaintiffs' claim that the verdict was improper. It contained surplusage—we might assume out of an excess of zeal and caution on the part of the jury—and we would do a painstaking jury a disservice to term the verdict improper, rather than merely composed of some 7 words too many.[4]

However, having determined that the words "find Edward Toles not negligent and we" are, fairly considered, mere surplusage, we cannot then employ them as the basis for determining that the plaintiffs' assignment of error is immaterial and beside the point. We therefore ignore these words for consistency in reasoning. Defendant is correct that there is no need for affirmative defenses if there is no negligence shown. However, since we must ignore these words, we cannot, at this point, consider that plaintiffs' assignment of error in the failure to give the requested instructions is without merit. In addition, a reading of the transcript discloses that the defendant did not attempt, prior to the appellate level, to confine the theory of assumption of risk to an affirmative defense, but rather tried to establish throughout that the defendant's act, which was the proximate cause of the minor plaintiff's injuries,

---

4 The fact situation here differs essentially from that which was before this Court in *Annoni* v. *Henson* (1965), 1 Mich App 689. In *Annoni*, the trial court improperly instructed the jury to bring in an answer to a special question and a general verdict. Since general verdicts accompanied by interrogatories are eliminated by GCR 1963, 514, this was clearly error.

was not negligent but rather one of the normal risks assumed by one who plays baseball.

We now have reached the point where we can determine if the court here committed reversible error in refusing to comply with plaintiffs' requests regarding the assumption of risk doctrine in the instant case.

The problem of whether a decision which overrules prior law should be applied prospectively or retrospectively has long plagued appellate courts. Once it has been determined that the "new" rule of law shall be prospectively applied, an additional question of assigning an effective date for the new rule is often required and has been dealt with in a variety of ways. See *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882). *Felgner* v. *Anderson, supra,* is a case wherein the language chosen by the Court (p 56) has made it abundantly clear that prospective effect is to be given its holding, without stating the exact time for the effectiveness, and the cases which followed have not compelled an exact determination of that date.[5]

---

[5] In *Brown* v. *Edgewater Park, Inc.* (1965), 374 Mich 674, the defendant in a negligence action alleged error in the court's failure to give an instruction on assumption of risk. The Court rejected this assignment of error, saying *inter alia*, in its concluding remarks, "Furthermore, under the reasoning and decision in the opinion of Mr. Justice SOURIS, this day handed down in *Felgner* v. *Anderson*, 375 Mich 23, such instruction *could not hereafter* be given in a case such as this absent evidence upon which could be predicated a finding of an express contractual assumption of risk." (Emphasis supplied.)

*Prentkiewicz* v. *Karp* (1965), 375 Mich 367, was presented to the Michigan Supreme Court for decision on March 2, 1965, which necessarily means that the judgment below was rendered thereon, and appellate briefs prepared, long before *Felgner* v. *Anderson, supra.* The plaintiffs (guest passengers) in *Prentkiewicz* brought action on a gross negligence theory and received a jury verdict. The defendants appealed from a denial of their motion for judgment *non obstante veredicto.* The Court determined that the question of gross negligence had been properly submitted to the jury. It further stated at p 373: "Defendant's contention that plaintiff, as a matter of law, should be barred from recovery because she assumed the risk, when she permitted Marlene to drive, is no longer tenable. See *Felgner* v. *Anderson*, 375 Mich 23."

The fortuitous events of a snowstorm dividing the date of the conclusion of a case from a jury charge and submission of the case thereto, with an intervening decision which changes the law, are not common occurrences. These circumstances would seem to compel us to set this date were it not for one other circumstance.

The plaintiffs' attorney in his initial efforts to get the assumption of risk theory removed from the case, cited *Schnepf* v. *Andrews* (1952), 333 Mich 509, wherein the plaintiff received judgment on a jury verdict for injuries which she claimed resulted from the negligent acts of the defendant dance instructor who was giving her a "jitterbug" lesson: subsequently the court below gave the defendants a judgment *non obstante veredicto*. The Supreme Court reversed on the theory that the plaintiff did not assume the risk of the injury received through defendant's negligent act, as this risk could not be foreseen. *Felgner, supra,* at 42, 43, discusses *Schnepf, supra,* at length as an example of a case wherein the Court used assumption of risk language, but was not applying the formal doctrine of assumption of risk as "the doctrine clearly was inapplicable

---

Although all the proceedings below were completed prior to the *Felgner* decision, this language merely indicates the obvious. If a court refused to apply a legal theory which is later discredited, it would not make sense to require it to do so once cases which so held have been overruled.

*Bumstead* v. *Bucht* (1966), 4 Mich App 4, placed before us a case wherein the judge injected the theory and terminology of assumption of risk in its charges. We noted at p 7 that "the trial judge did not have the benefit of *Felgner* v. *Anderson* (1965), 375 Mich 23, when this case was tried." However, we held that there was reversible error under the facts which the *Bumstead Case* presented in so instructing the jury.

In *Milauckas* v. *Meyer* (1965), 1 Mich App 500, although the trial was had a year and a half before *Felgner*, this Court still felt it necessary to discuss whether an instruction which used the terms "assumed any risk" and "assumed the risk" were objectionable where assumption of risk was not even pleaded by the defendants, nor did said phrase appear in the pretrial statements.

to the facts of that case."[6]  The instant case is but another example.  Here, as in *Schnepf,* what is meant by such language is that the defendant has no liability without negligent conduct; the defendant owed no duty to the plaintiffs to protect him from the ordinary activities of the baseball game not negligently caused by him (the defendant); and that plaintiff "assumed the risk" as to such ordinary activities.  Here, as in *Schnepf,* the doctrine was inapplicable and, as we noted before, it was not formally applied by the defendant or the court below.  This led to an erroneous result, similar to that in *Schnepf, supra,* and discussed in *Felgner, supra.*  *Felgner* thus highlights the problem before us.  *Schnepf* came to the right conclusion in refusing to hold that plaintiff assumed the risk, but did so under what *Felgner* discloses as ambiguous reasoning.  *Schnepf* was brought to the attention of the lower court in timely fashion and was factually applicable.  The cumulative effect of plaintiffs' continuous reiteration of the inapplicability of the doctrine, and the *Felgner* decision—which was brought to the court's attention but not heeded thereafter—necessitate reversal and a new trial.  We note that even prior to *Felgner,* courts have not felt compelled to apply the doctrine discredited therein.  See *Prentkiewicz, supra,* footnote 5.

---

[6] "Once again we see in the foregoing quotation the use of assumption of risk language when the Court, quite obviously, was not applying the formal doctrine of assumed risk, for the doctrine clearly was inapplicable to the facts of that case.  What the Court said in *Schnepf* was that the defendants incurred no liability for plaintiff's injuries unless they were caused by the defendants' negligent conduct; that defendants owed no duty to plaintiff to protect her from injuries resulting from the ordinary activities of life not negligently caused by them; and that plaintiff 'assumed the risk' of all such non-negligently caused injuries.  Clearly, the doctrine of assumption of risk has no utility in such context, nor do we presume that our judicial predecessors intended by the use of the language, 'assumed the risk,' to suggest that the doctrine of assumed risk was being applied to this case."

Since we reverse for a new trial, we must treat of those alleged errors which might reappear were we to conclude at this point.

The second question presented on appeal assigns as error the court's instruction on "unavoidable accident." We quote the instruction in the margin.[7] We note from the record on appeal that this instruction was requested by the defendant without any accompanying citation of authority. While this is not prerequisite, when this lack of authority is further demonstrated by the defendant's inability to find authority to substantiate it when it is challenged on appeal, we feel compelled to see if the cases cited by plaintiffs are distinguishable, as defendant maintains. We find that they are not. See *McClarren* v. *Buck* (1955), 343 Mich 300, and *Lober* v. *Sklar* (1959), 357 Mich 166. The mere fact that the court did not use the discredited phrase "unavoidable accident" does not mean that the instruction did not infer same. The reasoning of *McClarren, supra,* and *Lober, supra,* applies.

The plaintiffs, relying on *Horst* v. *Tikkanen* (1963), 370 Mich 65, seek to have this Court hold that there was additional error below as the court refused to give its "claim" or theory of the case to the jury. We note merely that *Horst, supra,* at 73, 74 says:

"We do not say that the various requests as made must have been given in the exact language of plaintiff. The rule is clear that this is not required. It is clear, however, that it is the responsibility of the trial court to explain the issues and the prin-

---

[7] "If you find from the evidence that the real cause of the plaintiff's alleged injury cannot be traced to any wrongful conduct, careless or negligent acts on the part of the defendant, the occurrence herein must be classified as that which was purely accidental and you must then find for the defendant, Edward Toles. The mere happening of an accident does not raise a presumption of negligence."

ciples of law applicable to the facts in issue. This would include each party's theory of the case."

Suffice it to say that we are assured that the trial court will adhere to this at the new trial.

Plaintiffs' fourth and final assignment of error questions the trial court's denial of plaintiffs' motion for a directed verdict on the issue of negligence and minor plaintiff's freedom from contributory negligence. The testimony in the record does not mandate such action by the court. Both issues were properly jury questions.

Reversed and remanded for a new trial. Costs to appellants.

BURNS and QUINN, JJ., concurred.