HIGGINS v PFEIFFER

Docket No. 169855. Submitted July 18, 1995, at Detroit. Decided February 9, 1996, at 9:15 A.M. Leave to appeal sought.

Jesse Higgins brought an action in the Wayne Circuit Court against Brian Pfeiffer, David McCullough, and Robert McCullough, all of whom were Higgins' teammates on an amateur baseball team, seeking damages for a personal injury sustained during a pregame warm-up. Higgins, while in the dugout, was hit in the eye by a pitch thrown by Pfeiffer, a pitcher, to David McCullough, a catcher. The ballpark did not have a pitchers' bullpen, Pfeiffer threw the errant ball toward the dugout, and Higgins chose to sit at a spot in the dugout where the protective fence was at its lowest height. The court, John H. Gillis, Jr., J., granted summary disposition for the defendants. Higgins appealed.

The Court of Appeals *held:*

Higgins' injury was within the scope of his consent to the risk of injury inherent in the game and attendant circumstances, including the peculiarities of the playing facilities. The trial court did not err in summarily dismissing the action.

Affirmed.

MICHAEL J. KELLY, P.J., dissenting, stated that summary disposition was granted erroneously. The question whether Higgins' injury is within the understood and accepted dangers of the sport, including those resulting from carelessness during warm-up, is a question for the trier of fact.

NEGLIGENCE — SPORTS — RISK OF INJURY.

Participants in sporting activity are assumed to be aware of the hazards inherent in the playing of the game and to have consented to the risk of injury inherent in the contest, other than breaches of contest rules designed to protect the safety of the players as opposed to the integrity of the contest.

*Lakin, Worsham & Victor, P.C.* (by *Larry A. Smith*), for Jesse Higgins.

REFERENCES

Am Jur 2d, Negligence § 835.
See ALR Index under Negligence.

*Still, Nemier, Tolari & Landry, P.C.* (by *Mark R. Johnson*), for Brian Pfeiffer. ·

*Morrison, Morrison & Finley* (by *Gregory W. Finley*), for David and Robert McCullough.

Before: MICHAEL J. KELLY, P.J., and SAWYER and D. R. FREEMAN,* JJ.

SAWYER, J. In this personal injury action, plaintiff Jesse Higgins and defendants Brian Pfeiffer and David and Robert McCullough were members of an amateur baseball team participating in an organized league. After plaintiff, along with other fielders, had warmed up on the playing field, he went to the dugout to await the start of the game while the opposing team went through its warm-up routine.

Defendant Pfeiffer, the pitcher, continued to warm up, but yielded the pitcher's mound to the opposing team, which was apparently the "home team." Pfeiffer continued to warm up on the sideline, throwing toward the dugout area where his teammates were sitting.

The field in question has no bullpen for warming up pitchers. The dugout is protected by a fence that is at least four feet high toward the outfield but higher toward home plate. Plaintiff chose to sit at the outfield end of the dugout. Plaintiff also seems to have been paying insufficient attention to the activities on the field.

As it came closer to game time, Pfeiffer, to test his pitching arm, began throwing fastballs, and the catcher, David McCullough, eventually signaled for a rising fastball. Pfeiffer threw one, but it "got away from him," went over the catcher's head, and although Pfeiffer or someone yelled,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"Heads up!" and two of plaintiff's teammates managed to duck, plaintiff was struck in the eye and suffered severe injuries. Robert McCullough was the acting coach and is charged with negligence for allowing his starting pitcher to warm up by throwing toward the dugout.

The Wayne Circuit Court granted defendants' motion for summary disposition. Plaintiff appeals and we affirm.

Plaintiff contends the circuit court erred, noting that the assumption of risk doctrine for sports-related injuries was abolished with the decision in *Carey v Toles,* 7 Mich App 195; 151 NW2d 396 (1967). That does not mean, however, that every case goes to the jury. Participants in sporting activity are assumed to be aware of the hazards inherent in the playing of the game and to have consented to the risk of injury inherent in the contest, other than breaches of contest rules designed to protect the safety of the players as opposed to the integrity of the contest. *Overall v Kadella,* 138 Mich App 351, 357 ff; 361 NW2d 352 (1984).

There are surprisingly few sports injury cases from around the country involving baseball. *Carey* was a baseball case, involving an unorganized contest in which the plaintiff, a minor, was struck in the face with a bat, thrown by a player who had, under the "house rules" under which the game was being played, made an "out," and who should not therefore have been running toward first base at all, and who accordingly had no occasion to throw his bat. *Carey* is thus within the more general rule of *Overall.*

One case from a sister state is, however, directly on point. In *O'Neill v Daniels,* 135 AD2d 1076; 523 NYS2d 264 (1987), the plaintiff was injured "when he was struck in the eye by a softball thrown by

the defendant, a teammate, during 'warm-up' activities prior to an amateur softball game." Upholding summary disposition, the appellate court applied a legal standard that seems indistinguishable from Michigan jurisprudence:

> "Traditionally, the participant's conduct was conveniently analyzed in terms of the defensive doctrine of assumption of risk. With the enactment of the comparative negligence statute, however, assumption of risk is no longer an absolute defense (*see,* CPLR 1411, eff Sept. 1, 1975). Thus, it has become necessary, and quite proper, when measuring a defendant's duty to a plaintiff to consider the risks assumed by the plaintiff [citations omitted]" (*Turcotte v Fell,* 68 NY2d 432, 437-438 [510 NYS2d 49; 502 NE2d 964 (1986)]). The duty of care owed to plaintiff "must be evaluated by considering the risks plaintiff assumed . . . and how those assumed risks qualified defendants' duty to him" (*Turcotte v Fell, supra,* at 438.)
>
> It is clear that plaintiff's participation in the game "warmup" was voluntary, and thus our concern is only with the scope of his consent. It is well established that participants may be held to have consented, by their participation, to injury-causing events which are known, apparent or reasonably foreseeable, but they are not deemed to have consented to acts which are reckless or intentional [citations omitted]. The question of whether the consent was an informed one includes consideration of the participant's general knowledge and experience in the activity.
>
> We conclude that plaintiff understood and accepted the dangers of the sport, including those resulting from carelessness during "warmup" activities, and accordingly plaintiff's complaint was properly dismissed. [135 AD2d 1077.]

That is consistent with *Hunt v Thomasville Baseball Co,* 80 Ga App 572; 56 SE2d 828 (1949), where the court held that a spectator at a professional

baseball game who chose a seat in an unprotected portion of the grandstand could not assert liability for injury resulting from a thrown ball during the warm-up before the game. The Court noted that the warm-up phase was a necessary part of every such game and that preliminary practice, in which many balls are employed, is a necessary incident to the playing of the game itself and hence an inherent risk.

Here, plaintiff chose a position in the dugout at the less-protected end and failed to pay attention to the activities on the field. Had plaintiff been seated, or taken a dugout position closer to home plate, it would seem he would not have been exposed to injury, because the ball either would have had to strike the fence or its trajectory would have carried it over plaintiff's head. The injury sustained was within the scope of plaintiff's consent implicit in the game and attendant circumstances, including the peculiarities of the playing facilities. Summary disposition was correctly granted.

Affirmed.

D. R. FREEMAN, J., concurred.

MICHAEL J. KELLY, P.J., *(dissenting)*. I respectfully dissent.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Neither the lower court nor the majority specifies the subsection on which it relies, but I think it erred with regard to both.

Plaintiff's cause of action is not barred simply because defendants were not alleged to have perpetrated wilful, reckless, or grossly negligent acts. Plaintiff has a legitimate cause of action based on his allegations of negligence. The majority opts for

a new rule that defendants cannot be liable unless their acts can be characterized as intentional or reckless. Although the trial court erred in granting defendants' motion on the basis that an athlete participating in a game assumes all obvious and foreseeable risks that are incident to the contest, the majority finds that the trial court reached the right result for the wrong reasons.

Assumption of the risk for sports-related injuries was abolished with the decision in *Carey v Toles,* 7 Mich App 195; 151 NW2d 396 (1967), relying on *Felgner v Anderson,* 375 Mich 23; 133 NW2d 136 (1965). Note that in *Carey,* there was no discussion of gross negligence or wilful, wanton, or intentional misconduct. The applicable law was assumed to be ordinary negligence.

In *Overall v Kadella,* 138 Mich App 351; 361 NW2d 352 (1984), this Court stated, apparently stacking by sleight of hand the equitable principle, "volenti non fit injuria, or, he who consents cannot receive an injury," *Overall, supra* at 357, and *Restatement Torts,* 2d, § 50, p 86, comment b, that consent to physical bodily contacts in sports contests prohibits recovery unless there is "an intentional act causing injury, which goes beyond what is ordinarily permissible, is an assault and battery for which recovery may be had." Without citing *Carey* and without clearly ruling out liability for negligence, the *Overall* Court seems to have reintroduced assumption of the risk under questionable rationale. However, that rationale is dicta because the Court affirmed a verdict resulting from an injury that occurred during a hockey-game fight. The Court seems to have affirmed on the basis that the defendant intentionally struck the plaintiff in violation of "the rule against fighting" in hockey contests. There was testimony of the existence of such a rule. These two cases, cited by the majority, would seem to entitle plaintiff to

offer testimony about the rules of the game and permit a trier of fact to decide these questions of fact:

1. Defendant pitcher was capable of throwing fastballs with extreme velocity. "Almost 90 miles per hour." Does that make plaintiff's injury foreseeable and a breach of a duty of due care?

2. All three defendants were aware that defendant pitcher was throwing toward the Taylor team dugout and that the bench was beginning to fill with players returning from warm-up. Would a reasonable battery (pitcher and catcher) desist?

3. All three defendants were aware of the pitcher's customary practice to "turn his last few warm-up pitches loose," meaning to throw them as fast and as hard as he was capable of. The team manager, Head Coach Leonard Makowski testified that the location where they were warming up was unsafe. Should the assistant manager have intervened?

4. Plaintiff had just returned to the dugout at the conclusion of outfield practice and taken a seat some ten to fifteen seconds before he was hit. Should defendants have been aware of his entry into their zone of activity and reacted accordingly?

In conclusion, whether plaintiff's injury is within the understood and accepted dangers of the sport, including those resulting from carelessness during warm-up activities, is a question of fact for the trier of fact. The majority has imported a rule of law for which there is no precedent in this state except the majority's ruling itself, which relies on Georgia and New York authorities. The predicate for this ruling is not based on "rules of the game" because none were properly introduced into evidence and the lower court's reliance on assumption of risk is clearly erroneous.

I would reverse.